IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :      CASE NO. 07-02528

ANGEL RAUL FIGUEROA RIVERA;                     :
GRISSEL VEGA CARDES                             :      CHAPTER 13
                                                :
       Debtors                                  :
                                                :
_____           :
                                                :
ANGEL RAUL FIGUEROA RIVERA;                     :
GRISSEL VEGA CARDES                             :      ADVERSARY NO. 08-00100
                                                :
       Plaintiffs                               :
                                                :
vs.                                             :
                                                :
MONEY'S PEOPLE, INC.;                           :
HECTOR MORALES OLIVERAS                         :
                                                :
       Defendants                               :

## OPINION AND ORDER

This adversary proceeding is before the court upon the complaint filed by Angel Raúl Figueroa Rivera and Grissel Vega Cardés (hereinafter referred as "Plaintiffs" and "Plaintiffs-Debtors") to determine the amount of interest which corresponds to the amended claim[1] filed by Money's People, Inc. and Héctor Morales Oliveras (hereinafter referred as "Defendants" and "Money's People"); and the alleged damages caused to the T47 Sealine vessel named "Angelymar" due to Defendants' failure, as judicial depositary, to provide the proper maintenance and safekeeping to the vessel, as required under the "good father of a family" standard of the Puerto Rico Civil Code.

A trial was held on January 15, 2009 in which Plaintiffs presented three (3) witnesses to attest to the damages suffered by the vessel due to Defendants' failure to provide adequate maintenance to the vessel as its judicial depositary which allegedly led to the vessel's depreciation in value (Docket No. 36). The court ordered both the Plaintiffs and Defendants to submit their own briefs regarding

---

[1] The Claims Register shows that Money's People, Inc. on June 20, 2007 filed a proof of claim for a secured debt in the amount of $432,260.52, claim number 9-1. Subsequently, on January 12, 2009 Defendants' filed an amended proof of claim for a secured debt in the amount of $460,757.29, claim number 9-2.

the calculation of interest that should be applied to the debt owed by Plaintiffs (Docket No. 36).

For the reasons set forth below this court determines that the interest amount owed is $42,861.96, plus the amount of judgment ($272,459.38) obtained in state court, minus $50,000.00 of cash garnished from Plaintiffs- Debtors, for a total claim of $265,321.34. This court also determines that Defendants as judicial depository of the vessel Angelymar had the duty (obligation) to provide maintenance to the vessel, and that the lack of maintenance caused the vessel to deteriorate substantially, resulting in a decrease in its market value. This court awards damages to Plaintiffs in the amount of $270,000.00.

## Facts and Procedural Background

Defendants Angel Raúl Figueroa Rivera and Grissel Vega Cardés filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on May 9, 2007. Defendants were scheduled as an unsecured creditor and included in the master address list. Such debt was marked by Plaintiffs as being disputed and contingent in nature. The Defendants were duly notified of the filing of the bankruptcy case. The 341 meeting of the creditors was held on June 11, 2007 (Docket No. 2 in lead case No. 07-02528[2]) and continued on June 12, 2007 (Docket No 7 in lead case), July 6, 2007 (Docket No. 13 in lead case), July 27, 2007 (Docket No. 19 in lead case) and August 29, 2007 (Docket No. 23 in lead case).

On July 26, 2007, Plaintiffs filed a "Motion Objecting Proof Of Claim #9" alleging that proper documentation was not enclosed with the proof of claim, and that garnishment for such claim was already executed (Docket No. 30 in lead case). Defendants filed their "Reply Of Creditor Moneys People, Inc. To Objection To Proof Of Claim #9 Filed By Debtor And Enclosed Supporting Documents" on July 30, 2007. Defendants filed with the court several documents with respect to the breach of contract case # KAC 2001-8502 in which Money's People was the Plaintiff and Angel R. Figueroa Rivera was the Defendant. The documents filed with the court are the following: (i)

---

[2]References to the lead case are to the entries and documents filed in the bankruptcy case, case number 07-02528(ESL).

2

Judgment; (ii) Notice of Judgment; (iii) Writ of Attachment; (iii) Order of Garnishment and Execution of Judgment; (iv) Assignment of Properties ("Señalamiento de Bienes"); (v) Affidavit of the General Marshall Mr. Juan M. Ortiz by Mr. M. González, Auxiliary Marshall; and (vi) Request to Property Registrar of Caguas, Section II to register Extract of Judgment in the Registry of Judgments of the Property Registry.

On August 6, 2007 the court issued an order setting the pretrial conference regarding the objection to claim #9 (Money People) for August 29, 2007 (Docket No. 33 in lead case). Plaintiffs sur replied on August 8, 2007 praying that proof of claim 9-1 be disallowed since it was already executed (Docket No. 36 in lead case). Defendants sur sur replied on August 16, 2007 alleging that Plaintiffs' statement regarding the execution of judgment in case K AC2001-8502 is incorrect, (Docket No. 42 in lead case).

Subsequently, Defendants filed a "Motion For Relief of Automatic Stay For Cause Under 11 U.S.C. Section 362(d)" on August 21, 2007 requesting the lifting of the automatic stay for certain real and personal property (Docket No. 44 in lead case). On August 24, 2007, Plaintiffs-Debtors filed a "Reply To Motion Requesting Relief From Automatic Stay" in opposition to the lifting of the automatic stay since the claim is in controversy and the judgment that was entered in state court impairs the homestead exemption under 11 U.S.C. §522 (Docket No. 48 in lead case). On September 5, 2007 a hearing was held and the issue of the objection to proof of claim #9 was discussed in light of an agreement that Plaintiffs-Debtors and Defendants were trying to reach with respect to this claim once an appraisal of the vessel is performed by an appraiser. It was also clarified that Scotiabank (creditor) has the first lien over the vessel and Money's People has the second lien (Docket No. 54 in lead case).

On September 11, 2007, Scotiabank filed a motion requesting the automatic stay to be lifted with regards to the vessel Angelymar based on lack of adequate protection for Scotiabank's security interest; Plaintiffs- Debtors lack of equity in the vessel; and that the same is not needed for Plaintiffs-Debtors effective reorganization (Docket No. 55 in lead case). Plaintiffs-Debtors on September 25, 2007, filed a "Reply To Motion Requesting Relief From Automatic Stay" requesting that the motion filed by Scotiabank soliciting the automatic stay to be lifted with respect to the vessel be held in

3

abeyance until the value of the vessel is determined (Docket No. 65 in lead case).

At a hearing held on September 11, 2007 it was disclosed that Scotiabank performed an appraisal of the vessel, and valued the same for $280,000.00 in a private sale, $240,000.00 at liquidation price, and $200,000.00 at dealer price. It was also disclosed by Scotiabank that Money's People also performed an appraisal on February of 2007 and the value of the vessel was $387,000.00 at the time (Docket No. 63 in lead case). The court granted Plaintiffs, Defendants and Scotiabank sixty (60) days to file a stipulation or joint motion for consent judgment regarding the vessel Angelymar (Docket No. 60 in lead case).

On October 2, 2007 a hearing was held to inform on the agreement between Plaintiffs-Debtors and Scotiabank. The proposed agreement basically consisted of the following: (i) Plaintiffs- Debtors agreeing to the lifting of the automatic stay with regards to the vessel; (ii) Scotiabank allowing Plaintiffs-Debtors a period of six (6) months to sell the vessel; and (iii) foreclosing on the same if Plaintiffs-Debtors are unable to sell the vessel. Both Scotiabank and Plaintiffs-Debtors requested ten (10) days to draft the agreement and submit the same to the court (Docket No. 69 in lead case). The court granted the parties ten (10) days to file a stipulation or joint motion for consent judgment; and that upon failure to so file, the court will enter an order lifting the automatic stay in favor of Scotiabank (Docket No. 67 in lead case). The court granted the agreement/stipulation on December 5, 2007 between Scotiabank and Plaintiffs-Debtors (Docket No. 77 in lead case).

Money's People on November 28, 2007 filed a motion moving the court to enter an order entering the lift of stay (Docket No. 75 in lead case). On November 28, 2007, Plaintiffs objected to the lifting of the automatic stay (Docket No. 76 in lead case). The matter was scheduled for a hearing January 22, 2008 (Docket No. 78 in lead case).

On January 22, 2008 the parties agreed that the automatic stay be lifted under the same terms of the agreement that was entered into between Scotiabank and Plaintiffs-Debtors (Docket No. 84 and 85 in lead case).

On July 1, 2008, Plaintiffs filed the present adversary proceeding including two claims for relief. Plaintiffs first claim for relief is Defendants' alleged willful violation of the automatic stay under the provisions of the Bankruptcy Code, 11 U.S.C. §362(a). The second claim for relief is that

4

Defendants erroneously calculated the interests owed by Plaintiffs on their debt, and for damages caused to the vessel Angelymar due to Defendants' failure to fulfill its obligations as judicial depository and provide adequate maintenance and safekeeping to the vessel.

On September 24, 2008 a status conference was held in which Plaintiffs' withdrew the first claim for relief. The court denied Defendants' motion to dismiss the complaint on *res judicata* grounds as the state court judgment did not address or considered the claim for relief in this adversary proceeding. The court indicated that a trial would be scheduled to determine whether or not Money's People was providing proper maintenance and safeguarding to the vessel and if there was any depreciation due to the alleged lack of prudent care towards the vessel (Dockets No. 15 and 17). Trial was scheduled for January 15 and 16, 2009 (Docket No. 18).

On January 8, 2009, Plaintiffs filed their proposed findings of fact and conclusions of law (Docket No. 28). Defendants filed their proposed findings of fact and conclusions of law on January 9, 2009 (Docket No. 30). Plaintiffs on January 9, 2009 filed a motion to supplement its proposed findings of fact and conclusions of law (Docket No. 32). On January 14, 2009, Plaintiffs filed a motion to inform the witnesses they were going to present at trial (Docket No. 35).

On January 15, 2009, a trial was held before this court regarding the second claim for relief of the complaint, namely, whether or not Money's People (Mr. Héctor Morales Oliveras) as the judicial depository of the vessel had failed to provide the same with adequate maintenance and safekeeping and if there was any depreciation due to this alleged negligent care of the vessel (Docket No. 36). The court granted Plaintiffs thirty (30) days to file a brief regarding the calculation of interest. Defendant was granted twenty (20) days to reply. Defendants did not present any witness or evidence and waived their right to present closing arguments at trial (Docket No. 36). Plaintiffs filed their brief regarding the interest calculation and the disallowance of the proof of claim on February 18, 2009 (Docket No. 38). Defendants filed their brief on March 2, 2009 (Docket No. 39).

Applicable Law and Analysis

*Duties of a Judicial Depository Under State Law*

The fact that Mr. Héctor Morales Oliveras, president of Money's People, was the judicial depository of the vessel Angelymar is not disputed. The issue is whether he provided adequate

5

maintenance and safekeeping to the vessel. The documents entitled, "Order of Garnishment in Execution of Judgment" and "Writ of Garnishment in Execution of Judgment" issued by the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Part, on October 11, 2006, case #KAC2001-8502, specifically establish that Mr. Héctor C. Morales Oliveras is the judicial depository with respect to all necessary garnishment proceedings. Mr. Morales was acting as judicial depositary when he attached Plaintiffs-Debtors vessel to secure the effectiveness of the judgment that was rendered by the Court of First Instance, San Juan Part, on September 24, 2004 and registered on October 28, 2004.

"A depositum contract can arise in various contexts." Jewelers Mutual Insurance Company v. N. Barquet, Inc., 410 F. 3d 2, 12 (1st Cir. 2005). "Further, a creditor can act as depositary when it attaches a debtor's property in order to secure the effectiveness of a judgment." Jewelers Mutual Insurance Company v. N. Barquet, Inc., 410 F. 3d at 12 referring to Rodriguez Soto v. Adorno, 4 P.R. Offic. Trans. 901, 104 P.R. Dec. 640 (1976).

The judicial depositary contract is governed by Articles 1685-1689 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§4711-4715. The standard of care a judicial depositary must exercise over the deposited (attached) item(s) is that of a "good father of a family." See 31 P.R. Laws Ann. §4714, 3021. The "good father" standard of care established in section 3021 of the Fourth Book of Contracts and Obligations of the Puerto Rico Civil Code, "is a default standard when the parties have not established some other standard, and it is not exclusive to depositum contracts, but is applied more broadly to certain other areas of the law." Jewelers Mutual Insurance Company v. N. Barquet, Inc., 410 F. 3d at 14. "The Puerto Rico Supreme Court has interpreted the standard in a way that has made it quite similar to ordinary negligence. The question is whether the depositor exercised 'the proper diligence, which generally should be that which 'an average or normal type of diligent person' would have exerted" Id referring to Rodriguez Soto v. Adorno, 4 P.R. Offic. Trans. at 909. The Puerto Rico Civil Code in employing the concept of the "good father of a family" had the purpose of allowing the courts to decide on a case by case basis the proper diligence which the average or normal type of diligent person should have taken. See Rodriguez Soto v. Adorno, 104 D.P.R. 640 referring to P.R. & American Ins. Co. V. Duran Manzanal, 92 D.P.R, 289 (1965) and American Sec. Ins. Co. v.

Ocasio, 102 D.P.R. 166 (1974).

In this case, an evidentiary hearing was held on January 15, 2009 in which an expert witness and two (2) lay witnesses testified regarding the depreciation in value of the vessel which resulted from Defendants' failure to provide maintenance and safekeeping to the vessel.

The only expert witness which testified during court proceedings was Mr. Joseph Barlia, a marine surveyor, who surveyed (appraised) the vessel on February 28, 2005 and concluded that at that point in time the fair market value of such vessel would be approximately $550,000.00 and its replacement value would be approximately $675,000.00. Mr. Barlia testified that according to his survey at the time the vessel, "is deemed to be a good fire and marine risk if recommendations are complied with." The mandatory recommendations consisted of replacing anchor lights and the sound device system. Mr. Barlia also testified that a vessel needs continuous maintenance in its different systems (in particular its propulsion system, alternate current system, direct current system, hydraulic system and navigation system) to remain in good operating condition. He also testified that the propulsion and generator systems need weekly maintenance to prevent the metals from getting corroded and damage to the engines. In addition, the oil, filters and hoses need to be changed and or checked, and the condition of the transmission also needs to be checked. Mr. Barlia further testified that if such maintenance was not given it would cause the vessel to undoubtedly depreciate and it would cause the vessel not to be operational. Mr. Barlia testified that the cost of such maintenance depended upon the vessel and the person who performed such services since it was cheaper if the owner of the vessel provided such maintenance. If this was not the case, one would have to hire somebody at approximately $50-$60 an hour to perform such services, plus the cost of replacement parts.

Mr. Barlia was presented with a survey of the vessel performed by marine surveyor, Mr. Carlos Suárez, on August 1, 2007. The survey contained a list of fifteen (15) recommendations which needed to be done to the vessel in order for the same to be in functional conditions. Amongst the recommendations were the following: (i) "engine comp bilge access hatch doesn't have air assisted cylinders installed, will not stay open; install cylinders, or lock;" (ii) "starboard engine raw water intake hose has corroded stainless steel strap at hose;" (iii) "starboard engine stuffing box hose

7

stainless steel strap present signs of corrosion;" (iv) "replace corroded fitting on hydraulic steering hose at cylinder;" (v) "replace corroded nuts and bolts at port and start starboard rudder base;" (vi) repair or replace bow thruster; start and test starboard engine;" and (vii) "port engine will not go above 1900 RPM on neutral." Mr. Barlia testified that if the systems of the vessel are as per the conditions of this survey, then the vessel may not operate in a safely manner. The fair market value as of the date of the survey was $280,000.00. Mr. Barlia upon comparison of the two surveys inferred that the vessel did not receive proper maintenance. He also stated that if you do not move any vessel from the slip, the systems get corroded, and stop operating; and thus, the value of the vessel may decrease significantly. Mr. Barlia was also presented with a comparable from the internet webpage boatshop which showed an internet advertisement dated July 27, 2007 of a Sealine T47 vessel with the same engine as the one in question whose asking price was $588,000.00.

Mr. Rudy de la Cruz was the second witness (first lay witness) to testify as to the conditions of the vessel Angelymar. Mr. de la Cruz testified that he was interested in buying a boat about approximately a year and half ago (within the last 2 years) from the trial date (~July 2007~January 2007) and that he went to see the vessel Angelymar, accompanied with a boat mechanic, and found the same in very poor condition. Mr. de la Cruz identified in court Mr. Héctor Morales as the person who gave him access to enter the vessel. Mr. de la Cruz testified that the upper deck of the vessel was in a "disastrous conditions," the canopy was ripped and that nothing in the vessel was in operating condition. He further testified that the battery was not charged, the electric generator was not working, and that initially the engine wouldn't start, but that some FURA (special police force) officers that were nearby the docking facilities helped start the engine. Mr. de la Cruz testified that after consulting with the boat mechanic he offered $125,000.00 for the vessel since he would have to spend more than $100,000.00 to repair the vessel. Mr. de la Cruz testified that his best recollection of the asking price of the vessel was approximately $300,000.00.

The third witness (second lay witness) to testify was Plaintiff Grissel Vega Cardés. Mrs. Cardés testified that the vessel Angelymar was garnished about two (2) years ago. She testified that her husband provided continuous maintenance to the vessel since he would hire people that were listed in the marina to perform the work maintenance to the vessel. Mrs. Cardés also testified that the

8

recommendations of the 2005 survey were followed. Plaintiff Cardés testified that after the vessel was garnished sometime after the year 2006, neither she or her husband had possession or access to the vessel. Mrs. Cardés also testified that she and her husband acquired the vessel Angelymar in a property exchange transaction and a photocopy of the invoice of the vessel was admitted as evidence during trial. This invoice (document #4) established that the sale price of the vessel on July 8, 2002 was $740,000.00.

The Defendants did not present any witnesses nor any documentary evidence during trial and waived presentation of their closing argument(s) before the court.

After considering the evidence presented to the court, the court concludes that Defendants as judicial depositories had the responsibility to provide adequate maintenance and safekeeping to the vessel, and that adequate maintenance and safekeeping were not provided to the vessel. This type of omission (lack of proper maintenance and safekeeping) fails to satisfy the standard of care of the "good father of a family" which is that of "an average or normal type of diligent person" which Article 1688 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 4714 imposes on the judicial depositary. In the case at hand, Defendants as judicial depositories failed to provide maintenance and safekeeping to the vessel which led to the vessel's significant deterioration and depreciation in value. For these reasons, the court awards Plaintiffs damages in the amount of $270,000.00.

*Interest Calculation of State Judgment*

During the trial the court granted Plaintiffs thirty (30) days to file a brief regarding the calculation of interest and Defendant was granted twenty (20) days to reply to the same. The state judgment for breach of contract was rendered on September 24, 2004 and the total amount owed per judgment was $272,459.38 of which $52,912.62 was allocated as principal and $219,546.76 was allocated as interest. Both Plaintiffs and Defendants agree in their legal briefs that Rule 44.3(a) of the Rules of Civil Procedure, 32 L.P.R.A. App. III R. 44.3(a) regarding legal interest applies for the calculation of interest accrued from the date of judgment (September 24, 2004) until the date on which Plaintiffs filed for bankruptcy (May 9, 2007). Thus, the applicable interest rate to be applied to the amount owed ($272,459.38) is six (6)% annual interest to be computed from September 24,

2004 until May 9, 2007. Plaintiffs' calculation resulted in $42,912.35 of interest. Defendants' interest calculation resulted in $42,957.55. The court's independent interest calculation of two (2) years and 227 days yields the amount of $42,861.96. Thus, the total claim for Money's People amounts to $265,321.34 ($272,459.38 per judgment plus $42,861.96 of interest minus $50,000.00 of cash that was garnished by Defendants).

The other issue raised by Plaintiffs was that Defendants as judicial depositories had the responsibility to make the monthly payments to Scotiabank for the first preferred ship mortgage securing a promissory note that was executed between Plaintiffs and Scotiabank. However, Plaintiffs in their brief failed to provide the legal explanation supporting their allegation that a judicial depository is responsible for the payments of a promissory note that was entered into between Plaintiffs and Scotiabank. Moreover, no evidence was presented during trial on this issue. Therefore, Plaintiffs waived their argument that a judicial depository is responsible for making the monthly payments of a promissory note entered into between Plaintiffs and Scotiabank which was secured by the vessel Angelymar.

## Conclusion

The court holds that Defendants, as judicial depositories, failed to provide adequate maintenance and safekeeping to the vessel Angelymar which led to the vessel's significant deterioration and depreciation in value. For the reasons herein stated the court awards Plaintiffs damages in the amount of $270,000.00. The court also holds that the interest from the date the state judgment was rendered (September 24, 2004) until the date of the filing of Plaintiffs' bankruptcy (May 9, 2007) amounts to $42,861.96.

Judgment will be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of June 2009

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge

10